# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** <br> **Black/Silver VAULTZ lock box secured at the Rosebud County Sheriff's Office, Ashland, Montana** | MJ-20-96-BIG-TJC <br><br> **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |

1. I, Raul Figueroa, being first duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

2. I am a Special Agent with the Bureau of Indian Affairs (BIA), Division of Drug Enforcement (DDE). As such, I am "an investigative or law enforcement officer of the United States," within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516 and Title 21 of the United States Code. I became a Special Agent with the Bureau of Indian Affairs (BIA), Division of Drug Enforcement, in June of 2019. I am currently assigned to the Fort Peck Indian Reservation,

1

but routinely get detailed to various parts of Montana and the United States.
Prior to being employed by the BIA, I worked for three years with the
Department of Defense, Special Reaction Team (SRT), Law Enforcement
Division in Pueblo, Colorado. I worked for fourteen years with the Bureau of
Prisons as a Senior Officer Specialist in Florence, Colorado. I have been
employed in law enforcement since 2001, with approximately three years of
experience as a uniformed patrol officer and five years as a drug investigator,
investigating felony drug offenses for the Bureau of Prisons.

3. I have received training from several state, local, and federal agencies,
including the Department of Defense Law Enforcement Officers Course in Fort
Leonard Wood, Missouri; Special Reaction Team Training (SRT) in Fort
Carson, Colorado; Bureau of Prisons Law Enforcement Training Academy
Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia; and
the Criminal Investigator Training Program (CITP) at FLETC in Glynco,
Georgia.

4. As a result of my experience and training, I have conducted and/or
participated in numerous investigations to include, but not limited to, physical
and electronic surveillances, questioning of witnesses, suspects, and informants,
applications and executions of search, seizure, and arrest warrants, evidence

collection, and recognition of controlled substances.  I also have training and experience in the recognition of paraphernalia used for ingesting, distributing, manufacturing, and storing controlled substances, as well as recognizing conduct common to drug traffickers.  Some of the methods common to drug traffickers include the laundering of drug proceeds derived from the sale of illicit substances, as well as the hiding of assets.  I have participated in continuing education and training in law enforcement related fields including, but not limited to, technological applications (electronic surveillance) and basic drug investigations and drug interdiction.

5.  The statements contained in this affidavit are based on my experience and background as a patrol officer, and a Special Agent for the BIA, and on information provided by other law enforcement agents.

6.  I am currently investigating Christopher Harold TREBER for distributing methamphetamine in Lame Deer, Montana.  Additionally, I am investigating TREBER for being a user and an addict of methamphetamine in possession of two firearms.

7. Based  on  my  training,  experience,  and  participation  in  previous investigations, I know:

3

8. That drug distributors possess controlled substances as well as packaging material, including plastic wrap, Ziploc bags, cutting agents, scales, vacuum sealed bags, vacuum sealers, and measuring cups.

9. That distributors of controlled substances often use and possess books, records, receipts, notes, ledgers, address books, hand written notes, and other papers relating to the transportation, ordering, purchase, possession, and distribution of controlled substances, including bank statements, checking accounts, and safe deposit boxes.

10. That distributors of controlled substances often use and possess financial proceeds of dealing in controlled substances, namely currency of the United States or other countries, financial instruments including money orders or wire transfers, which are evidence of proceeds of drug dealing and money laundering, or which have been used or are intended to be used to further drug dealing and the money laundering.

11. That distributors of controlled substances often use and possess papers, tickets, notes, receipts, and other items relating to domestic or international travel.

12. That distributors in controlled substances often use and possess documentary evidence in the form of vehicle titles and registration receipts reflecting the acquisition, ownership, and/or registration of vehicles.

13. That distributors in controlled substances often use records of drug transactions, including lists of customers and suppliers, lists of expenses and payments, lists of drug prices, and oftentimes keep these records to reflect debts.

14. That distributors in controlled substances often use and possess documents that may aid in the identification of and/or the current location of controlled substances and/or proceeds from controlled substance transactions, including storage units receipts, safe deposit box records, and rental agreements.

15. That distributors in controlled substances often use and possess weapons, to include firearms, ammunition, knives, or explosives, which may be used to protect and/or guard controlled substances, and/or the personal security of the drug distributors.

16. That in the process of weighing, packaging, processing, and hiding of contraband, small amounts of controlled substances are often left behind and adhere to scales, safes, and containers they have been stored in.

17. In virtually all the prior drug search warrants your affiant has been involved in, where contraband has been located, documents, records, and/or proceeds of the sale of controlled substances have also been found.

18. That drug distributors often maintain, on hand, significant amounts of United States Currency to maintain and finance their ongoing narcotics business.  When drug supplies are low and distributors are waiting to be re-supplied, they often have significant amounts of cash on hand to repay previous debt or pay for a new shipment.

19. The hiding of proceeds and/or contraband is not only designed to protect its detection by law enforcement, but also other drug users and competitors, as it is common for people with large amounts of cash and/or drugs to get "robbed."

20. That people involved in distributing drugs conceal currency, financial instruments, and/or proceeds or negotiable instruments of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of money made from engaging in drug activity.

21. That people involved in the distribution of drugs sometime secure their extra amounts of product (controlled substances) in safes, cases, lock boxes or other lockable cases.  That they also conceal in those cases other items that are commonly used for the sale or purchase of controlled substances, such as scales,

baggies, spoons, measuring devices and kits (commonly referred to "kits," which contain items used to ingest controlled substances.

22. The information contained within this affidavit is based on my investigation, training, and experience, as well as information given to me by other law enforcement officers involved in this investigation.   Because this affidavit is being submitted for the exclusive purpose of securing a search warrant, I have not included every fact known to me concerning this investigation.   I have set forth only the facts necessary and appropriate to establish probable cause for the requested search and seizure warrant

## **SCOPE OF THIS SEARCH WARRANT APPLICATION**

23. I am submitting this affidavit under Rule 41 of the Federal Rules of Criminal Procedure in support of an application for a search warrant authorizing a search of a black with silver trim VAULTZ security box retrieved from a 2000 white Ford F-350 truck displaying Montana vehicle license plate CTA275, registered to Craig and Terri Treber, 214 Principal Street, Lame Deer, Montana.   The truck was driven by Christopher Harold TREBER, on October 15, 2020, in Lame Deer, Montana, as described below.   The black with silver trim VAULTZ box is currently secured at the Rosebud County Sheriff's Office evidence room, in Ashland, Montana.

24. The purpose of this application is to seize evidence of violations of 21 U.S.C. § 841(a)(1), possession with intent to distribute and/or distribution of methamphetamine, and 18 U.S.C § 922(g)(3), unlawful user or addict of methamphetamine.

## **BACKGROUND OF INVESTIGATION**

25. On October 15, 2020, at 2:26 a.m., BIA Police Officer Rossman, conducted a traffic stop on a 2000 white Ford F-350 truck displaying Montana vehicle license plate CTA275 around the area of 717 Little Wolf Street, Lame Deer, Montana, which is within the exterior boundaries of the Northern Cheyenne Indian Reservation.  BIA Officer Rossman ran a Montana license check with dispatch and the truck came back as a white 2000 Ford F-350 registered to Craig and Terri Treber, 214 Principal Street, Lame Deer, Montana.  Christopher Harold TREBER, son of Craig and Terri Treber, was driving the truck. A passenger of the truck was later identified as Tony SANCHEZ.

26. During the initial contact, Officer Rossman asked TREBER if there were any weapons inside the truck.  TREBER stated that there was a rifle next to him on the driver's side of the truck.  After TREBER got out of the truck, Officer Rossman asked if there were any other weapons inside the truck.  TREBER stated that there was a pistol in the driver's side door of truck.  While removing the

8

Glock 22C from the driver's side door, Officer Rossman saw in plain view a metal spoon with what appeared to be drug residue on it.

27. Officer Rossman then requested that BIA K-9 Officer Chapoose assist in the traffic stop. After TREBER and SANCHEZ were removed from the truck, Officer Chapoose deployed his Utah Post certified narcotics detection dog, Warus, who performed an open-air sniff on the 2000 white Ford F-350. Warus alerted to the presence of narcotics odor emanating from the truck.

28. A subsequent probable cause search of the truck was conducted by Officers Rossman and Chapoose. Officer Chapoose located the metal spoon with residue on it and a plastic wrapper with white powdery substance on it. According to Officer Chapoose's knowledge and training, he identified it as drug paraphernalia. Officer Rossman saw numerous plastic baggies of various sizes in the rear seat of the truck. Officer Rossman also located a lock box under the front console of the truck. The box is black with silver trim and has "VAULTZ" on it.

29. Officer Chapoose conducted a pat down search of TREBER and felt a solid object that crunched when he squeezed it in TREBER's right coat pocket. Officer Chapoose removed a small black zipper bag from TREBER's coat pocket, looked inside the bag, and saw several baggies containing a white crystalline substance,

which Officer Chapoose recognized as having the consistency of methamphetamine. TREBER was then secured in handcuffs. It was later determined that the total weight of the baggies and crystalline substance was 5.6 grams. The passenger, SANCHEZ, was searched. Nothing was found on SANCHEZ and he was allowed to leave.

30. TREBER advised that he is not a member of any federally recognized tribe, so Officer Rossman asked dispatch to contact the Rosebud County Sheriff's Office (RCSO). An RCSO deputy responded to the location in order to transport TREBER to the Rosebud County Jail. All evidence was turned over to the responding RCSO deputy, including the locked black and silver box. The evidence is secured at the RCSO.

31. On October 15, 2020, TREBER was interviewed while in custody in Rosebud County. During the interview, TREBER advised he was a teacher in Lame Deer, Montana, and that he was recently fired by the Northern Cheyenne Tribal Council. TREBER explained that he had just picked up SANCHEZ on top of a hill between Ashland, Montana, and Lame Deer, Montana, prior to being stopped, and that he did not know SANCHEZ. Your Affiant asked TREBER if he would be willing to submit to a urinalysis drug test, which he refused. TREBER was adamant that the drugs were not his and were most likely SANCHEZ's.

TREBER continued to deny previously knowing SANCHEZ. TREBER admitted that he owned both the Glock 22C, serial number # LAU124, and the FN PS90 rifle, serial number # FN06918. TREBER admitted that he was addicted to Percocet over five years ago and that he had tried methamphetamine once.

32. That same day, October 15, 2020, your Affiant then traveled to the RCSO, Ashland, Montana, to retrieve the drug evidence seized from the 2000 white F-350 truck, which consists of five small Ziploc style bags. Your Affiant could see a white crystalline substance that appeared to be methamphetamine. Your Affiant used his agency issued TruNarc Narcotics Analyzer to conduct a scan of one of the bags, which provided a presumptive positive identification of methamphetamine. Your Affiant also saw both firearms that were seized, numerous empty baggies, a spoon and the locked black and silver box with "VAULTZ" embossed on a metal tag on top of the box, which remained unopened.

33. On October 16, 2020, your Affiant met with the manager of the Lame Deer School District teachers' housing, Starlyn Whiteman, who confirmed that TREBER previously lived in the teachers' housing and was evicted on September 1, 2020, due to a verbal report of possible drug trafficking.

34. Your Affiant conducted a BIA records check for Northern Cheyenne and found a record of a traffic stop on January 21, 2019, that involved TREBER and SANCHEZ.  TREBER and SANCHEZ were identified as passengers in a vehicle where drugs were found.  The stop occurred near 417 Muddy Cluster, Lame Deer, Montana, on the Northern Cheyenne Indian Reservation.

## **CONCLUSION**

35. As a result of your Affiant's personal participation in this investigation and his knowledge gained from reports, law enforcement databases and conversations with other law enforcement officers, your Affiant believes that there is probable cause to believe that there is evidence of possession with intent to distribute and/or distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and evidence of possession a firearm and/or ammunition by a unlawful drug user/addict, in violation of 18 U.S.C. § 922(g)(3), contained in the black with silver trim VAULTZ lock box found in the white 2000 Ford F-350 bearing Montana vehicle license # CTA275, a truck driven by TREBER on October 15, 2020.  The lock box is secured at the Rosebud County Sheriff's Office, Ashland, Montana.

DATED this 23 day of October, 2020.

Raul Figueroa
Special Agent
Bureau of Indian Affairs
Division of Drug Enforcement

Sworn to me over the telephone and signed by me pursuant to Federal

Rules of Criminal Procedure 4.1 and 4(d) on this 26 day of October, 2020.

TIMOTHY J. CAVAN
United States Magistrate Judge
District Of Montana

13